[Civ. No. 4853. First Appellate District, Division Two.—December 30, 1924.]

## CHARLES F. NIGHTINGALE, Appellant, v. HARRY G. WILLIAMS, as Auditor, etc., Respondent.

[1] MUNICIPAL CORPORATIONS—LEGALITY OF CLAIM AGAINST—DETERMINATION OF CITY OFFICIALS—MANDAMUS.—The court in a *mandamus* proceeding will determine the legality of a claim against a municipal corporation when resisted by the auditor, and the approval of the claim by the city council after rejection by the auditor does not preclude the latter from raising the question of its invalidity.

[2] ID.—APPROVAL OF CLAIM—LEGALITY OF CLAIM—COURTS—FACT.—When a claim against a public corporation is approved by the duly constituted approving body the courts may examine into the legality of the claim to see whether it is one which such body had authority to approve; but when the action of the approving body depends upon its determination of a question of fact such determination is conclusive.

[3] ID.—SUSPENSION OF POLICE OFFICER—LEGALITY OF CLAIM FOR SALARY—QUESTIONS OF LAW—JURISDICTION OF COURT.—In a proceed-

———

3. See 21 Cal. Jur. 963.

ing in *mandamus* to compel the auditor of a city to draw and sign his warrant upon the city treasury for the amount of petitioner's salary as a member of the municipal police department during the period of his suspension from that office, where two questions of law were involved—whether the petitioner was legally suspended from his office and whether a suspended officer is entitled to the salary attached to the office during the period of suspension—the trial court had jurisdiction to hear and determine the issue whether as a matter of law the claim was a legal obligation against the city.

[4] ID.—NOTICE OF SUSPENSION — CONSTRUCTION.—The statement in the notice of petitioner's suspension that he was suspended pending further investigation refers to the period rather than the ground of the suspension and merely indicates that the action was temporary or for an indefinite time.

[5] ID.—GROUNDS OF SUSPENSION — CHARTERS.—It was not necessary that the notice of petitioner's suspension should state the grounds therefor, where the charter did not require it to do so.

[6] ID. — SUSPENSION — MEASURE OF SUSPENDED OFFICIAL'S RIGHTS. — As the mode prescribed in the charter is the measure of the power of the city authorities respecting the suspension of a subordinate, so is it the measure of the right of the subordinate to demand action on the part of his superior.

[7] ID.—CAUSE OF SUSPENSION — CHARTER PROVISIONS — NOTICE.—In such proceeding, the court is not concerned with the sufficiency of the cause of petitioner's suspension, where, under the provisions of the city charter, the suspended official is not entitled to a notice and hearing before suspension.

[8] ID.—CHARTERS—PERFORMANCE OF DUTIES—PRESUMPTIONS.—In such proceeding, where the city charter authorizes the person suspended to demand and receive a full hearing before the commissioner if he is dissatisfied with the order of suspension, and also provides for an appeal and hearing before the civil service board after decision by the commissioner, it must be presumed, in the absence of any proceedings of this nature, that the chief of police, who suspended the petitioner, as well as the commissioner, duly performed their respective duties and that the suspension was regularly made.

[9] ID.—ACQUIESCENCE IN ORDER OF SUSPENSION—SUSPENDED OFFICIAL NOT ENTITLED TO SALARY.—A suspended official, who does not di-

---

9. Earnings of public officer during period of wrongful exclusion from office as deductible from salary due, note, **Ann. Cas.** 1912B, 897. See, also, 22 **R. C. L.** 543.

rectly attack, but who acquiesces in, the order of suspension, is not entitled to the compensation attached to his office during the period of suspension.

---

(1) 38 C. J., p. 919, n. 26; 28 Cyc., p. 1751, n. 17, p. 1752, n. 21. (2) 28 Cyc., p. 1750, n. 99, p. 1752, n. 19, 20.    (3) 38 C. J., p. 919, n. 26.    (4) 28 Cyc., p. 523, n. 69 New.    (5) 28 Cyc., p. 523, n. 69 New.    (6) 28 Cyc., p. 432, n. 78, p. 593, n. 78, 81, p. 596, n. 89. (7) 38 C. J., p. 919, n. 27.    (8) 38 C. J., p. 913, n. 45.    (9) 28 Cyc., p. 525, n. 93.

APPEAL from a judgment of the Superior Court of Alameda County. Dudley Kinsell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Crosby, Naus & Crosby for Appellant.

Leon E. Gray, City Attorney, and Bestor Robinson, Deputy City Attorney, for Respondent.

NOURSE, J.—Plaintiff commenced this action in *mandamus* in the superior court of Alameda County to compel the defendant, as auditor of the city of Oakland, to draw and sign his warrant upon the treasury of that city for the amount of his salary as a member of the municipal police department during the period of his suspension from that office. ' The facts of the case briefly are that on July 11, 1921, the plaintiff, while a member of such police department, shot and killed one Joseph Suppro. He was immediately accused of murder and was arrested upon that charge. The chief of the police department, in pursuance to the authority given him by the municipal charter, suspended the plaintiff pending further investigation. The chief gave plaintiff due notice of this suspension and within due time reported the facts in writing to the commissioner of public health and safety, as required by the charter, and said commissioner in due time certified the fact of petitioner's suspension to the civil service board. The action of the chief of police was followed by a suspension of the plaintiff by the commissioner. From the date of his suspension until January 4, 1922, the plaintiff did not report for duty nor perform any services of the office of patrolman; did not protest to any of his superiors that his suspension was illegal and did not

demand his salary for the period for which he was sus-
pended. On January 3, 1922, the appellant was acquitted
by a jury of the charge of murder and was immediately
thereafter reinstated to his position in the police department.
He thereafter demanded his salary for the period of his
suspension, and this demand was refused by the auditor.
The demand was thereafter presented to the city council,
which, without a hearing of any kind, approved the claim
by a four-fifths vote and ordered the auditor to draw his
warrant therefor. The auditor again refused the claim and
this action results from such refusal. After a trial upon
the merits the trial court rendered judgment in favor of the
defendant. From this judgment and from the order deny-
ing plaintiff's motion for judgment on the findings the plain-
tiff appeals on the judgment-roll and on a bill of excep-
tions.

It is unnecessary to consider the various motions which
the appellant made during the course of the proceedings or
to give particular consideration to the second appeal because
the allegations of the answer relating to the suspension of
the appellant and his acquiescence therein raised an issue
of both law and fact which the trial court was required to
determine, and this was sufficient to support the order of
the trial court denying appellant's motion for judgment on
the pleadings, as well as the order on demurrer to the answer
and the motion made after judgment.

The point upon which appellant bases main reliance is
that the approval of the claim by the city council forecloses
all inquiry by the auditor, as well as by the courts, concern-
ing the validity of the claim. In this connection appellant
insists that the rule of *Contra Costa Water Co.* v. *Breed,*
139 Cal. 432 [73 Pac. 189], compels us to hold with him on
this point. The rule to which counsel refers is not the real
rule of the case cited. The language which he quotes is
from the minority opinion which rests on the doctrine of
estoppel found in *Argenti* v. *San Francisco,* 16 Cal. 255,
265. This doctrine—that a public corporation may not re-
fuse payment of a claim for service received on the ground
that the claim was not incurred in a legal manner—was
expressly rejected by the supreme court in *Zottman* v. *San
Francisco,* 20 Cal. 96 [81 Am. Dec. 96], and, in the Contra
Costa case, four of the members of the court refused to

follow the doctrine and refused to concur in the opinion
from which counsel quotes. The majority of the court in
the latter case issued the *mandamus* on the ground that the
claim was legally incurred and that the resistance of the
auditor had no legal support. [1] The only rule which
can be taken from the opinions of the majority of the court
in the Contra Costa case applicable to this appeal is that
the court will in *mandamus* determine the legality of the
claim when resisted by the auditor and that the approval
of the council after rejection by the auditor does not pre-
clude the latter from raising the question of its invalidity.

All our authorities following the Contra Costa case are
in harmony with this view. (See *Biggart* v. *Lewis,* 183
Cal. 660, 672 [192 Pac. 437]; *Hammel* v. *Neylan,* 31 Cal.
App. 21, 25 [159 Pac. 618]; *Dufton* v. *Daniels,* 190 Cal.
577, 581 [213 Pac. 949]; *Clinton Construction Co. of Cali-
fornia* v. *Clay,* 34 Cal. App. 625, 628 [168 Pac. 588].)

[2] The rule which we draw from the authorities is that
when a claim against a public corporation is approved by
the duly constituted approving body the courts may examine
into the legality of the claim to see whether it is one which
such body had authority to approve; but when the action
of the approving body depends upon its determination of a
question of fact such determination is conclusive. To illus-
trate the rule—if a claim based upon a contract for the
performance of some service for a municipality is resisted
on the grounds that the contract was invalid and that the
work was not properly performed, the council has the au-
thority (sometimes called jurisdiction) to pass upon both
grounds when the claim is presented for final approval. The
determination of the council on the question of the perform-
ance of the work is a determination of an issue of fact,
which, if the legal mode of procedure has been followed,
will be taken as conclusive by the courts. But its determina-
tion of the question of the validity of the contract is but a
conclusion of law which is open to review in any proper pro-
ceeding.

We have not found anything to the contrary in *Contra
Costa Water Co.* v. *Breed,* but if that case is authority for
the proposition to which it is cited by appellant, that the
approval by the council is conclusive on questions of both
law and fact, then the case must be held to have been over-

ruled to that extent by the later rulings of our supreme court. The last expression of that court is found in *Dufton* v. *Daniels,* 190 Cal. 577, 580 [213 Pac. 949, 950], where it is said: "The fact that the board of control, in auditing claims against the state acts in a sense judicially does not preclude the issuance of a writ of mandate to control its action, where, as here, the facts are all admitted and are susceptible to but one construction. (Citing cases.) . . . It may be conceded for the purposes hereof that if there had been a disputed question of fact determined by the board *upon conflicting evidence,* its finding *thereon* would be conclusive, but such is clearly not the case here." (Emphasis ours.)

[3] In view of these authorities it necessarily follows that the trial court had jurisdiction to hear and determine the issue whether as a matter of law the claim was a legal obligation against the city. In this determination two questions of law are involved—whether the appellant was legally suspended from his office and whether a suspended officer is entitled to the salary attached to the office during the period of suspension.

On the first point the fact of suspension is conceded. The only attack on the legality of the suspension is that the appellant was not given legal notice thereof and that legal grounds therefor were not stated in the report of the chief to his superior. [4] The appellant argues that as the notice of suspension stated that he was suspended pending further investigation this must be deemed to be the sole *ground* or cause of the suspension. But this language refers to the period rather than the ground of the suspension and merely indicates that the action was temporary or for an indefinite time. Section 81 of the Oakland charter authorizes any chief official to suspend a subordinate for incompetency, neglect of duty or disobedience of orders and requires such official to "report the facts" in writing to the commissioner of his department and furnish a copy "of the report" to the suspended official upon his request therefor. If the one suspended demands it, the commissioner must hold a hearing and affirm or revoke the suspension.

The appellant was suspended by the chief of police, the officer authorized by this section. The facts were reported to the commissioner as required, but the appellant did not

request a copy of the report and did not demand a hearing before the commissioner. The trial court found that the appellant was legally suspended and that, in addition thereto, he acquiesced in said suspension from the day it was made until January 4, 1922, and during that time never reported for duty, performed any service pertaining to his office, protested to his superiors, or demanded payment of his salary. [5] The evidence fully supports these findings, but the appellant insists that the finding of legal suspension is wrong because the notice of suspension did not state the grounds therefor. The answer is that the charter does not require it to do so. [6] As the mode prescribed in the charter is the measure of the power of the city authorities respecting the suspension of a subordinate so is it the measure of the right of the subordinate to demand action on the part of his superior. The general and universal rule is that a subordinate officer or employee who has no fixed term of office may be suspended or removed at the pleasure of his superior or appointing officer. This power has been generally limited in respect to municipal and state officers or employees under various civil service laws. Where such laws place restrictions upon the power of suspension or removal the authority of the superior is to that extent curtailed, but it is not necessary that he should do more than the law limiting his authority requires. Thus, where a suspension may be made for certain causes but notice thereof is not required to be given to the subordinate, it is sufficient if the legal causes exist *in fact* and it is not necessary to specify such causes in the order of suspension.

Two cases are discussed in the briefs as bearing upon this question: *Matter of Carter*, 141 Cal. 316 [74 Pac. 997], and *Bannerman* v. *Boyle*, 160 Cal. 197 [116 Pac. 732]. The first involved an interpretation of the charter of the city of San Diego which authorized the mayor to remove certain officers and required him "in case of such removal" to give "written notice thereof stating the cause to the person removed." The supreme court held that as the charter required the notice to be given to the "person removed" the act of removal was not judicial and the court could not inquire into the sufficiency of the cause assigned. The Bannerman case involved an interpretation of the San Francisco charter which provided that certain officers might be "removed by

the mayor for cause." The supreme court held that the words "for cause," without qualification, meant legal cause and that the power to remove was thus limited to a showing of good cause proved upon a hearing after reasonable notice.

[7] The provisions of the Oakland charter providing for the suspension of a subordinate and a subsequent hearing by the commissioner are similar to those of the San Diego charter considered in the Carter case in that the suspended official is not entitled to a notice and hearing before suspension and therefore the court in this proceeding is not concerned with the sufficiency of the cause of the suspension.

In passing, it should be pointed out that the suspended official is not deprived of his remedy by this interpretation of the charter. Section 81 of the charter authorizes the person suspended to demand and receive a full hearing before the commissioner if he is dissatisfied with the order of suspension, and section 82 provides for an appeal and hearing before the civil service board after decision by the commissioner. In both instances the person suspended would be entitled to question the sufficiency of the grounds for his suspension and could demand a full hearing. [8] In the absence of any proceedings of this nature we must presume that the chief of police, as well as the commissioner, duly performed their respective duties and that the suspension was regularly made.

In addition to this the trial court found that the appellant had acquiesced in his suspension. The evidence in support of this finding is that he made no protest to any officer that his suspension was illegal; he did not follow any of the remedies provided in the charter for relief; he did not report for duty or offer to perform any official service; he did not demand any salary for the period of his suspension until he was restored to duty, but accepted without protest the voucher of his July salary up to the day of his suspension.

[9] The next question which presents itself is whether a suspended official, who does not directly attack, but who acquiesces in, the order of suspension, is entitled to the compensation attached to his office during the period of suspension. The weight of authority supports the conclusion of the trial court that the appellant was not entitled to his salary during such period. (19 R. C. L. 941; *Hagan* v. *City of Brooklyn,* 126 N. Y. 643 [27 N. E. 265]; *Byrnes*

v. *City of St. Paul,* 78 Minn. 205 [79 Am. St. Rep. 384, 80 N. W. 959]; *Cote* v. *Biddeford,* 96 Me. 491 [90 Am. St. Rep. 417, 52 Atl. 1019, 1020].) The appellant has not questioned this rule of law and has not raised any point on the ruling of the trial court that he was not entitled to his salary if lawfully suspended. His point is that he was unlawfully suspended and that for that reason he was entitled to his compensation. If the suspension had been unlawful his right to the salary would not be open to question. (*O'Neill* v. *Williams,* 53 Cal. App. 1, 3 [199 Pac. 870].) As the suspension was lawful and the appellant for that reason was not entitled to his salary, it follows that his claim for such salary was not a lawful claim against the city and the council was without authority to order it paid.

Judgment affirmed.

Langdon, P. J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 26, 1925.

All the Justices concurred.